1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

8

| | |
|---|---|
| N.R., by and through his parents and guardians, S.R. and T.R., individually and on behalf of all others similarly situated, and derivatively on behalf of the Raytheon Health Benefits Plan, | NO. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | |
| RAYTHEON COMPANY; RAYTHEON HEALTH BENEFITS PLAN; AND WILLIAM M. BULL, | |
| Defendants. | |

## I.  PARTIES

1.    *N.R.*  Plaintiff N.R. is the five-year-old son and dependent of S.R. and T.R., and resides in Middlesex County, Massachusetts.  N.R. is a beneficiary, as defined by the Employment Retirement Security of Act of 1974 ("ERISA") § 3(8), 29 U.S.C. § 1002(8), of the Raytheon Health Benefit Plan.  N.R.'s coverage is through T.R.'s employment with Raytheon Company.

CLASS ACTION COMPLAINT – 1

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

2.     *Raytheon Health Benefit Plan.*  Defendant Raytheon Health Benefit Plan ("Plan") is an employee welfare benefit plan under ERISA.  The Plan provides health benefits for Raytheon employees and their dependents such as N.R.

3.     *Raytheon Company.*  Raytheon Company ("Raytheon") is the "Plan Sponsor" and is a named fiduciary under ERISA.

4.     *William M. Bull.*  William M. Bull, Vice President – Compensation, Benefits, Performance Development, Mergers & Acquisitions and Workforce Intelligence at Raytheon is the "Plan Administrator" and a named fiduciary under ERISA.  The Plan, Raytheon and Mr. Bull shall be collectively referred to as "Defendants."

## II.   JURISDICTION AND VENUE

5.     Jurisdiction of this Court arises pursuant to ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).

6.     Venue is proper under ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because, *inter alia*, a defendant resides or may be found in this district.

7.     In conformity with 29 U.S.C. § 1132(h), Plaintiff has served this Amended Complaint by certified mail on the Secretary of Labor and the Secretary of Treasury.

## III.   NATURE OF THE CASE

8.     N.R. seeks to end Defendants' standard practice of discrimination against N.R. and other participants and beneficiaries with autism spectrum disorder ("ASD") and other developmental mental health conditions in the provision of Defendants' health benefits.  Timely and intensive provision of medically necessary speech therapy can dramatically improve the health and life-long well-being of enrollees with ASD and other developmental mental health conditions.  Speech therapy services that treat developmental mental health conditions can be medically necessary, even when the service is provided when there is no documented prior loss of speech.

CLASS ACTION COMPLAINT – 2

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON  98121
TEL. (206) 223-0303   FAX (206) 223-0246

9.      Defendants, however, exclude all coverage of medically necessary speech therapy to treat developmental mental health conditions based solely on the Plan's exclusion of coverage of speech therapy that is "non-restorative."  In addition to the "non-restorative speech therapy" exclusion, Defendants' Plan includes to two additional similar exclusions: "non-restorative ABA speech therapy," and "habilitation services."  Collectively, these three exclusions are referred to in this Complaint as the "Non-Restorative Exclusions" or the "Exclusions."  The Plan's Non-Restorative Exclusions are aimed at eliminating coverage of speech therapy and other services for developmental mental health conditions.  As such, the Exclusions are a proxy for disability discrimination, and improperly exclude coverage of medically necessary services to enrollees with developmental mental health conditions.  Plaintiff seeks to enforce the Federal Mental Health Parity Act, through ERISA and the terms of the Plan to end such discriminatory practices.

10.      On October 3, 2008, Congress passed the Paul Wellstone and Pete Domenici Mental Health Parity and Addiction Equity Act of 2008 (the "Parity Act").  The Parity Act expanded the scope of previous federal legislation on access to mental health coverage and was "designed to end discrimination in the provision of coverage for mental health and substance use disorders, as compared to medical and surgical conditions." *Coalition for Parity v. Sebelius*, 709 F. Supp. 2d 10, 13 (D.D.C. 2010).  The Parity Act requires that the exclusions and limitations imposed on mental health benefits are "no more restrictive" than those applied to substantially all medical and surgical benefits.  *See* 29 U.S.C. § 1185a(a)(3); 42 U.S.C. § 300gg-5(a)(3); 26 U.S.C. § 9812(a)(3).  The Parity Act took effect as of October 3, 2009.

11.      The Parity Act requires that if Defendants cover mental health conditions at all (and they do), Defendants must cover services to treat mental health conditions without special treatment limitations only imposed on such services. 29 U.S.C.

CLASS ACTION COMPLAINT – 3

§ 1185a(3)(A)(ii).   It further requires that Defendants ensure that any treatment limitations imposed on coverage for services to treat mental health conditions are no more restrictive than the predominant treatment limitations imposed on substantially all of the coverage for services to treat medical and surgical conditions. *Id.*

12.     Defendants violate the Parity Act when they apply a blanket exclusion of coverage for speech therapy or other services to treat developmental mental health conditions pursuant to their Non-Restorative Exclusions. Defendants apply this uniform policy even when the service is medically necessary to treat the developmental mental health condition.  Defendants apply the Exclusions, despite covering the same service for non-mental health conditions, such as when needed to treat a stroke or physical injury resulting from an accident.  Specifically, Defendants denied Plaintiff N.R.'s request for coverage of medically necessary speech therapy to treat his ASD.  When N.R. appealed, Defendants denied his appeal, asserting that speech therapy to treat N.R.'s diagnosis of ASD was excluded from the Plan solely as "non-restorative."

13.     Defendants' uniform exclusion of speech therapy and other services to treat certain developmental mental health conditions pursuant to its Non-Restorative Exclusions violates the requirements of the Parity Act, 29 U.S.C. § 1185a, and its implementing regulations, which are incorporated in the Plan as additional "terms of the plan" under ERISA.  By failing to comply with the Parity Act and the terms of the Plan, Defendants systemically and uniformly fail to properly process claims and administer the Plan.  The Plan's participants and beneficiaries have not received the benefits they are entitled to under the Plan as modified by the Parity Act.  The Plan's participants and beneficiaries are also misinformed by Defendants with respect to their right to coverage under the Plan and the Parity Act.

14.     This lawsuit seeks remedies for Defendants' breach of fiduciary duty under ERISA.  It further seeks to recover the benefits that have been wrongfully denied

CLASS ACTION COMPLAINT – 4

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

to N.R. and the proposed class.  It also seeks a court order declaring Defendants' Non-Restorative Exclusions illegal and void.  The lawsuit further seeks an injunction to prevent future or ongoing efforts by Defendants to use and enforce the Non-Restorative Exclusions, or any other similar plan provisions that impermissibly deny, exclude or limit enrollees' access to medically necessary speech therapy or other services to treat developmental mental health conditions.  Finally, it seeks to require Defendants to provide accurate information concerning coverage of speech and habilitative therapies to treat developmental mental health conditions under the Plan.

## IV.  CLASS ALLEGATIONS

15.     *Definition of Class*.  N.R. proposes the following class:

All individuals who:

(a) have been, are, or will be participants or beneficiaries under the Raytheon Health Benefit Plan in effect or renewed on or after January 24, 2014; and

(b) who have received, require, or are expected to require services for the treatment of a qualified mental health condition that are excluded by the Plan pursuant to the "non-restorative speech therapy," "non-restorative ABA speech therapy," and "habilitative services" exclusions.

Definition: The term "qualified mental health condition" shall mean a condition listed in the most recent Diagnostic and Statistical Manual of Mental Disorders published by the American Psychiatric Association to which Defendants applied and/or currently apply the Plan's "non-restorative speech therapy," "non-restorative ABA speech therapy," and "habilitative services" exclusions.

16.     *Size of Class*.  The class of persons who have been, are or will be participants or beneficiaries under the Plan since January 24, 2014,  and who have received, require or are expected to require speech or other services that are subject to

CLASS ACTION COMPLAINT – 5

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON  98121
TEL. (206) 223-0303   FAX (206) 223-0246

1 the Plan's Non-Restorative Exclusions is expected to number at least in the hundreds

2 and is so large that joinder of all members is impracticable.

3      17.    *Class Representative N.R.* Named plaintiff N.R. is an enrollee in the Plan.

4 N.R. is diagnosed with ASD, a mental health condition listed in the most recent

5 Diagnostic and Statistical Manual of Mental Disorders (DSM). N.R. needs speech

6 therapy to treat his ASD. Defendants denied N.R.'s request for coverage of speech

7 therapy services as excluded under the Plan pursuant to the Non-Restorative Exclusions.

8 His claims are typical of the claims of the other members of the class, and through his

9 parents, he will fairly and adequately represent the interests of this class.

10      18.    *Common Questions of Law and Fact.* This action requires a determination

11 of whether Defendants' policies and practices that deny, exclude and/or limit coverage

12 of services to treat qualified mental health conditions pursuant to the Non-Restorative

13 Exclusion violates the terms of the Plan and the Federal Mental Health Parity Act.

14 Adjudication of this issue will in turn determine whether Defendants are liable under

15 ERISA for their conduct.

16      19.    *Separate suits would create risk of varying conduct requirements.* The

17 prosecution of separate actions by class members against Defendants would create a risk

18 of inconsistent or varying adjudications with respect to individual class members that

19 would establish incompatible standards of conduct. Certification is therefore proper

20 under Federal Rule of Civil Procedure 23(b)(1).

21      20.    *Defendants have acted on grounds generally applicable to the class.*

22 Defendants, by applying the Non-Restorative Exclusions which result in the exclusion

23 and improper limitation of coverage of services to treat qualified mental health

24 conditions, have acted on grounds generally applicable to the class, rendering

25 declaratory relief appropriate respecting the entire class. Certification is therefore

26 proper under Federal Rule of Civil Procedure 23(b)(2).

CLASS ACTION COMPLAINT – 6

1    21.    *Questions of law and fact common to the class predominate over*

2 *individual issues.*   The claims of the individual class members are more efficiently

3 adjudicated on a class-wide basis.   Any interest that individual members of the classes

4 may have in individually controlling the prosecution of separate actions is outweighed

5 by the efficiency of the class action mechanism.   Upon information and belief, there is no

6 pending class action suit filed against the Defendants for the same relief requested in this

7 action.

8    22.    *Venue.*   This action can be most efficiently prosecuted as a class action in

9 the District of Massachusetts, where defendant Raytheon does business and where N.R.

10 resides.   Issues as to Defendants' conduct in applying standard policies and practices

11 towards all members of the class predominate over questions, if any, unique to members

12 of the class.   Certification is therefore additionally proper under Federal Rule of Civil

13 Procedure 23(b)(3).

14    23.    *Class Counsel*.   N.R. has retained experienced and competent class

15 counsel.

16                        **V.   FACTUAL BACKGROUND**

17 **A.    N.R.'s Administrative Appeal**

18    24.    N.R. is a five-year old child who was diagnosed with autism spectrum

19 disorder in 2017 by Sarah Barnett, M.D.

20    *25.*    Dr. Barnett recommends that N.R. receive speech therapy services to treat

21 his ASD.  *See Appendix 10.*

22    26.    N.R.'s speech therapy is provided by Ann Kulichik, MS, CCC-SLP/I, BRS-

23 S.  Ms. Kulichik is a licensed Speech Language Pathologist.

24    27.    Ms. Kulichik provided speech therapy to treat N.R.'s identified diagnoses

25 of ASD (F84.0), Mixed receptive-expressive language disorder (F80.2), and phonological

26 disorder (F80.0).  *See Appendix 1*, pp. 3-4.  These conditions are all listed in the "Mental,

CLASS ACTION COMPLAINT – 7

Behavioral and Neurodevelopmental Disorders" chapter of the International Statistical Classification of Diseases and Related Health Problems, 10th Revision, known as the ICD-10.  These conditions all correspond to specific mental health conditions listed in the latest version of the Diagnostic and Statistical Manual of Mental Disorders ("DSM").

28.     Ms. Kulichik also noted certain symptoms, signs and abnormal clinical findings that did not correspond to any specific diagnosis, identified in the "R" chapter of the ICD-10.  The "R" chapter is titled, "Symptoms, Signs and Abnormal Clinical and Laboratory Findings, Not Elsewhere Classified (R00-R99))."  Those symptoms included dysarthria and anarthria (R47.1) and dysphagia, oral phase (R13.11). *See **Appendix 1**.* These symptoms and signs codes are not diagnosis codes, and do not reflect either "mental health" or "medical/surgical" conditions.

29.     Ms. Kulichik submitted N.R.'s claims for speech therapy using the procedure or CPT (current procedural terminology) code of "92507."  *See id.*, p. 5. This code is used to describe the delivery of treatment for speech, language, voice, communication and/or auditory processing disorders.  According to the American Speech-Language-Hearing Association, this CPT code is very comprehensive and generally includes all components of treatment.[1]  This CPT code may be used when speech therapy is provided to treat a developmental mental health condition like ASD or a medical condition like a stroke or physical injury.

30.     On at least one occasion, Ms. Kulichik submitted a claim with the CPT code 92526, which is for treatment of swallowing dysfunction and/or oral function for feeding.  *See **Appendix 1**,* p. 7.  Based on information and belief, this CPT code may be

---

[1] *See* https://www.asha.org/practice/reimbursement/coding/coding_faqs_slp/#:~:targetText=CPT%20code%2092507%20(treatment%20of,includes%20all%20components%20of%20treatment. (last visited 12/5/19).

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON  98121
TEL. (206) 223-0303   FAX (206) 223-0246

1   used when speech therapy is provided to treat a developmental mental health condition

2   like ASD or a medical condition like a stroke or physical injury.

3       31.    All of N.R.'s claims for speech therapy were denied by United Healthcare

4   ("United"), the Plan's third-party administrator.

5       32.    The reason for the denials contained in the Explanations of Benefits to

6   N.R.'s parents was "3A" which was explained as "this service is not covered for the

7   diagnosis listed on the claim."  *See e.g., **Appendix 2.***  The Explanation referred N.R.'s

8   parents to the "plan documents" generally but did not identify any specific language in

9   the plan upon which the denial was based.  All of the denials that N.R.'s parents received

10  contained the identical language and did not identify any specific plan language that

11  resulted in the exclusion of N.R.'s speech therapy.

12      33.    On April 22, 2019, N.R.'s parents appealed United's denial of coverage for

13  N.R.'s speech therapy.  *See **Appendix 11;  Appendix 1**, p. 11.*

14      34.    The appeal letter included multiple letters of medical necessity, including

15  from N.R.'s speech pathologist and his board-certified behavior analyst.  ***Appendices 5-***

16  ***6.***

17      35.    N.R.'s parents argued that the Plan's exclusion of "non-restorative" speech

18  therapy violated the Parity Act.  *See **Appendix 11,** pp. 2, 5-8.*

19      36.    By letter dated July 31, 2019, United denied the first level appeal filed by

20  N.R.'s parents.  For the first time, United disclosed the specific plan language that was

21  the basis for the denial.  United disclosed the following reason for the denial of coverage:

22
23          You are asking for speech therapy.  This is for your child.  Your
            child is autistic.  Your child does not speak clearly.  Your
            benefit document covers speech therapy if your child lost
24          speech.  It is to restore speech that was lost.  Your child has not
            had speech that was lost.  Therefore, speech therapy is not
25          covered.  The appeal is denied.

26  ***Appendix 3.***

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

37.     The denial did not address the legal arguments made by N.R.'s parents that the Non-Restorative Exclusions violate the Parity Act.

38.     On August 8, 2019, N.R.'s parents submitted a lengthy second level appeal of the Plan's denial of coverage for his speech therapy.  *See Appendix 4.*

39.     They included the letters of medical necessity from N.R.'s speech pathologist and his board-certified behavior analyst and made additional legal argument regarding the illegality of defendants' Non-Restorative Exclusions.  *See Appendix 4,* pp. 2, 5-8.

40.     On September 12, 2019, United denied the second level appeal.  The second denial letter stated:

> I have reviewed the information that was submitted for this appeal.  I have also reviewed your benefits.  You have requested speech therapy for your child.  This therapy is a benefit under your health plan only if your child's (*sic*) had speech that was lost.  Based on your health plan guidelines, your request is denied.

*Appendix 7*.  The denial did not address the legal arguments made by N.R.'s parents.

41.     After the appeals process was completed, N.R.'s parents requested all of the documents relied upon by United, including the internal communications and notes.

42.     United's internal records reflect that no medical necessity review was conducted.  *Appendix 1*, pp. 2-3 ("Medical Necessity Review: No").

43.     N.R.'s speech therapy is medically necessary to treat his conditions. Defendants have never disputed that N.R.'s speech therapy is medically necessary.

44.     For the first level appeal, United's Samuel T. Wilmit, MD, FAAP reviewed the appeal.  Dr. Wilmit concluded that:

> [T]o be considered covered services, speech and nonverbal communication services must comply with restorative only requirements.  To be considered restorative, the speech or nonverbal communication function must have been

CLASS ACTION COMPLAINT – 10

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

previously intact.   With this member, this is not the case.
Therefore speech therapy is excluded from coverage
/07/18/2019.

*Appendix 1,* p. 10.

45.     Dr. Wilmit does not identify the source for his conclusion that N.R. did not

have "previously intact" speech or nonverbal communication.  No effort to reach out to

N.R.'s pediatrician or Ms. Kulichik was undertaken.  *See id.,* p. 16 ("PEER TO PEER: Not

applicable").   Instead, it appears that Dr. Wilmit concluded that coverage was

unavailable due solely to N.R.'s diagnoses.  *See id.,* p. 11.

46.     United also provided the internal notes for the second level appeal.

47.     The United internal notes for the second appeal state:

> This request is for speech therapy for a 4 year-old boy.  This
> child has autism and a speech disorder.   There is no
> documentation that speech therapy is needed for restoration
> of speech.  The speech therapy is not a covered benefit and the
> request is denied.

*Id.,* p. 16.  There is no evidence in the United notes that the reviewer considered N.R.'s

parents' legal argument that the non-restorative exclusions violated the Parity Act.  *See*

*id.*

48.     After exhausting both levels of internal appeal within the Raytheon Plan,

N.R.'s parents, through counsel, contacted Raytheon and United Healthcare to obtain

(a) the list of non-mental health conditions to which the Plan applies the "non-

restorative" speech therapy exclusion, and (b) the "medical necessity criteria for both

medical/surgical benefits and mental health and substance use disorder benefits, as well

as the processes, strategies, evidentiary standards and other factors used to apply" the

"non-restorative speech therapy" exclusion, the "non-restorative ABA speech therapy"

exclusion  and the exclusion of "habilitative services" under the Plan.  *See* 29 C.F.R.

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON  98121
TEL. (206) 223-0303   FAX (206) 223-0246

§ 2590.712(d)(3); *Appendix 8.* No response was received by N.R., his parents or his counsel.

**B.      Classwide Factual Allegations**

49.      During certain time periods on and after January 24, 2014, N.R. and members of the class have been, are or will be participants or beneficiaries of the Plan, which is subject to ERISA pursuant to 29 U.S.C. § 1003.

50.      Since January 24, 2014, and continuing to the present, N.R. and other members of the class have been diagnosed with qualified mental health conditions, including ASD.

51.      N.R. and other members of the class have required, currently require or will require speech therapy to treat their qualified mental health conditions.  Defendants, however, have excluded all coverage of such treatment through the application of the "non-restorative" exclusion.

52.      Based upon N.R.'s administrative record, and information and belief, N.R. and members of the proposed class have been and will continue to be denied coverage of medically necessary speech therapy and habilitative services due solely to Defendants' application of the non-restorative exclusions.

53.      The application of this uniform exclusion is not "at parity" with the Plan's coverage of medical/surgical services.

54.      For example, the 2019 Summary Plan Document describes coverage of medical/surgical services for congenital conditions.  *Appendix 12,* p. 31 (Congenital heart disease is covered); p. 33 (congenital malformations resulting in infertility are covered).  Coverage for these conditions is not limited to only "restorative" treatment.

55.      There is no general exclusion for "non-restorative" treatment in the Plan. *Id.,* pp. 67-82.  There is no special exclusion in the Plan for "non-restorative" treatment that applies to medical and surgical conditions.  *Id.* Indeed, the "habilitative" exclusion

CLASS ACTION COMPLAINT – 12

in the Plan applies only to mental health services. *Id.,* p. 79 ("the following *mental health (including Autism Spectrum Disorder (ASD) services)/substance-related and addictive disorders* services are not covered:… Habilitative services, which are health care services that help a person keep, learn or improve skills and functioning for daily living, such as non-restorative ABA speech therapy.").

56.   Based upon the plain language of the Plan document and N.R.'s administrative records, the only services that are subject to the Plan's "non-restorative" exclusions are services that are used to treat developmental mental health conditions, such as ASD.

57.   Based upon the plain language of the Plan document and N.R.'s administrative records, the Plan and United exclude "non-restorative speech therapy," "non-restorative ABA speech therapy" and "habilitative services" based upon whether the claims for the services were submitted with certain developmental mental health condition diagnostic codes and/or various symptoms and signs codes associated with certain developmental mental health conditions.

58.   Based upon N.R.'s administrative record, the Plan and United fail to conduct an individualized review of claims denied pursuant to the "Non-Restorative Exclusions" to determine, in each instance, whether the enrollee once had speech that was lost.   Instead, the Plan and United automatically deny coverage based upon a specific list of ICD-10 codes deemed to be "non-restorative."   *See e.g., **Appendix 1,** p. 2 ("Medical Necessity Review: No"); p. 3 ("This service is not covered for the diagnosis listed on the claim.").

59.   As a result, N.R. and other members of the class have paid for medically necessary speech therapy and other services out of their own pockets or face the imminent threat that they will have to do so in the near future.   Other class members have been forced to forgo needed treatment due to Defendants' conduct.

CLASS ACTION COMPLAINT – 13

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

60.     In light of the established Plan documents, statements and written representations by Defendants to the parents and providers of N.R. and other members of the class, any attempt by class members to pursue administrative remedies is futile. Nonetheless, N.R. has completed both levels of the Plan's internal appeal process to no avail.  He has exhausted his administrative remedies.

## VI.   CLAIMS FOR RELIEF

### FIRST CLAIM:
### BREACH OF FIDUCIARY DUTIES
### ERISA §§ 404(a)(1), 502(a)(2); 29 U.S.C. §§  1104(a), 1132 (a)(2)

61.     N.R. re-alleges all paragraphs above.

62.     Defendant Raytheon Company is a fiduciary under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), because it is the "Plan Sponsor" and is a named Plan fiduciary. Defendant Raytheon Company exercises discretionary authority or discretionary control with respect to the denial and appeal of denied claims under the Plan.

63.     Defendant William Bull is a fiduciary under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), because he is the Plan Administrator and a named Plan fiduciary. Defendant Bull exercises discretionary authority or discretionary control with respect to the denial and appeal of denied claims under the Plan.

64.     ERISA imposes strict fiduciary duties upon plan fiduciaries.  ERISA § 404(a)(1)(C), 29 U.S.C. § 1104(a)(1)(C), states, in relevant part, that a plan fiduciary must discharge its duties with respect to a plan "solely in the interest of the participants and beneficiaries and … in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this title and Title IV."

65.     ERISA § 409(a), 29 U.S.C. § 1109(a), states, in relevant part:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this title shall be personally liable

CLASS ACTION COMPLAINT – 14

to make good to such plan any losses to the Plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the Plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

66.     The terms of an ERISA plan include non-preempted provisions of substantive law, such as the requirements in the Parity Act.  Defendants have failed to comply with the terms of the Plan, which include the requirements of the Parity Act and its implementing regulations.

67.     Defendants violated their obligations under ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), by failing to act in accordance with the documents and instruments governing the Plan, and breached their fiduciary duties to the Plan, N.R. and all class members.

68.     As a direct and proximate result of these acts and omissions, N.R., and other class members have suffered harm and losses and are entitled to relief under ERISA against Defendants.

69.     N.R., and class members seek relief compelling Defendants to restore all losses arising from the breaches of fiduciary duties that occurred when treatment was denied that is required by the terms of the Plan as modified by the Parity Act.

**SECOND CLAIM:**
**CLAIM FOR RECOVERY OF BENEFITS, CLARIFICATION OF RIGHTS**
**UNDER TERMS OF THE PLANS AND CLARIFICATION OF**
**RIGHT TO FUTURE BENEFITS UNDER THE PLAN**
**ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B)**

70.     N.R. re-alleges all the paragraphs above.

71.     ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), provides that a participant or beneficiary may bring an action to "recover benefits due to him under the terms of his

CLASS ACTION COMPLAINT – 15

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

1   plan, to enforce his rights under the terms of the plan, or to clarify his rights to future

2   benefits under the terms of the plan."

3       72.     N.R. and the class are entitled to recover benefits due them under the terms

4   of the Plan.   They are also entitled to a declaration of present and future rights to

5   coverage of speech therapy to treat qualified mental health conditions.

6                              **THIRD CLAIM:**
**CLAIM TO ENJOIN ACTS AND PRACTICES IN VIOLATION OF THE TERMS**
7   **OF THE PLANS, TO OBTAIN OTHER EQUITABLE RELIEF AND TO**
**ENFORCE THE TERMS OF THE PLANS**
8   **ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3)**

9       73.     N.R. re-alleges all the paragraphs above.

10      74.     ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), provides that a participant or

11  beneficiary may "enjoin any act or practice which violates any provision of this

12  subchapter or the terms of the plan."  N.R. and the class seek to enjoin Defendants from

13  continuing to apply exclusions and limitations on all coverage of speech therapy to treat

14  qualified mental health conditions.  N.R. and the class also seek corrective notice and

15  reformation of the relevant Plan documents.

16      75.     ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), further provides that a

17  participant or beneficiary may obtain other appropriate equitable relief to redress

18  violations of ERISA or enforce plan terms.  To the extent full relief is not available under

19  ERISA § 502(a)(1)(b), 29 U.S.C. § 1132(a)(1)(B) or ERISA § 502(a)(2), 29 U.S.C.

20  § 1132(a)(2), then N.R. and the class seek equitable remedies including, without

21  limitation, unjust enrichment, disgorgement, restitution, surcharge and consequential

22  damages arising out of the Defendants' failure to administer the terms of the Plan as

23  modified by the Parity Act and implementing regulations.

24

25

26

CLASS ACTION COMPLAINT – 16

**FOURTH CLAIM:**
**VIOLATION OF ERISA AND MENTAL HEALTH PARITY**
**DISCLOSURE REQUIREMENTS**
**ERISA § 502(a)(1)(A), 29 U.S.C. § 1132(a)(1)(A)**

76.     N.R. realleges all the paragraphs above.

77.     Plaintiff seeks sanctions for up to $110 per day for defendants' failure to produce or ensure the production of the "medical necessity criteria for both medical/surgical benefits and mental health and substance use disorder benefits, as well as the processes, strategies, evidentiary standards and other factors used to apply" the Non-Restorative Exclusion.  *See* 29 U.S.C. § 1024(b)(4); 29 C.F.R. § 2590.712(d)(3); 29 C.F.R. § 2520.104b-1; 29 C.F.R. § 2575.502c-1; *Appendix 8.*

## VII.  DEMAND FOR RELIEF

78.     WHEREFORE, N.R. requests that this Court:

(a)     Certify this case as a class action; designate named plaintiff N.R., by and through his parents, S.R. and T.R., as class representative, and designate SIRIANNI YOUTZ SPOONEMORE HAMBURGER, PLLC, Eleanor Hamburger and Richard E. Spoonemore, and FAIR WORK, P.C., Stephen Churchill, as class counsel;

(b)     Enter judgment on behalf of the Plan, N.R. and the class for losses due to Defendants' breaches of fiduciary duty and failure to pay Plan benefits;

(c)     Declare that Defendants may not apply the Non-Restorative Exclusions  or any other plan provisions, policies or practices that wholly exclude or impermissibly limit outpatient speech therapy or other services to treat qualified mental health conditions, when such exclusions and limitations are not predominantly applied to substantially all outpatient medical and surgical services and/or the exclusions and limitations are separate treatment limitations applied only to mental health services;

(d)     Enjoin Defendants from further violations of the terms of the Plan as modified by the Parity Act and implementing regulations;

CLASS ACTION COMPLAINT – 17

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON  98121
TEL. (206) 223-0303   FAX (206) 223-0246

1    (e)    Enter judgment in favor of N.R. and the class for damages in an

2  amount to be proven at trial due to the failure to provide benefits due under the Plan as

3  modified by the Parity Act and its implementing regulations;

4    (f)    Award N.R. and the class their attorney fees and costs under ERISA

5  § 502(g), 29 U.S.C. § 1132(g); and

6    (g)    Award such other relief as is just and proper.

7    DATED:  January 24, 2020.

8    FAIR WORK, P.C.

9
    By:  *s/ Stephen Churchill*
10    Stephen Churchill (BBO #564158)
    192 South Street, Suite 450
11    Boston, MA 02111
    Tel. (617) 607-3260
12    Fax (617) 448-2261
    Email:  steve@fairworklaw.com
13

14    SIRIANNI YOUTZ
    SPOONEMORE HAMBURGER PLLC
15

16    By:  *s/ Eleanor Hamburger*
    By:  *s/ Richard E. Spoonemore*
17    Eleanor Hamburger  (WSBA #26478)
    Richard E. Spoonemore  (WSBA #21833)
18    *(pro hac vice application to follow)*
    3101 Western Avenue, Suite 350
19    Seattle, WA  98121
    Tel. (206) 223-0303
20    Fax (206) 223-0246
    Email:  ehamburger@sylaw.com
21          rspoonemore@sylaw.com
22

23    Attorneys for Plaintiff

24

25

26

CLASS ACTION COMPLAINT – 18