UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| N.R., by and through his parents and guardians, S.R. and T.R., individually and on behalf of all others similarly situated, and derivatively on behalf of the Raytheon Health Benefits Plan,<br><br>     Plaintiff,<br><br>v.<br><br>RAYTHEON COMPANY; RAYTHEON HEALTH BENEFITS PLAN; and WILLIAM M. BULL,<br><br>     Defendants. | Civil Action No. 1:20-cv-10153-RGS |

**PLAINTIFF'S UNOPPOSED MOTION:
(1) PRELIMINARILY APPROVING SETTLEMENT AGREEMENT;
(2) APPROVING CLASS NOTICE PACKAGE; AND
(3) ESTABLISHING A FINAL SETTLEMENT APPROVAL
HEARING AND PROCESS**

### I. INTRODUCTION

Plaintiff N.R., by and through his parents S.R. and T.R., brought this class action lawsuit against the Raytheon Company ("Raytheon"), Raytheon Health Benefits Plan ("Plan") and its then Plan Administrator, William M. Bull (collectively "Defendants") challenging the legality of the Plan's "Speech, Habilitative and Non-Restorative Therapy Services Exclusion" ("Exclusion"). Specifically, Plaintiff sought coverage for medically necessary speech therapy to treat his autism spectrum disorder ("ASD"), a condition viewed by Defendants as excluded from such coverage as "non-restorative." Plaintiff also sought to represent the interests of similarly situated individuals.

Defendants moved to dismiss Plaintiff's claims, which this Court granted. However, the First Circuit Court of Appeals reversed the dismissal and remanded the case for further proceedings. In the meantime, on January 1, 2022, Defendants removed

the Exclusion from the Plan, and began to cover medically necessary speech therapy services for ASD and other conditions previously considered to be "non-restorative."

On remand, the parties engaged in extensive settlement negotiations, which culminated in a final, executed settlement agreement dated August 12, 2022. *See* Agreement to Settle Claims, attached as *Appendix 1* ("*App. 1*" or "Agreement"). *See also* Dkt. No. 44-1. Under the terms of the Agreement, Defendants will provide both prospective and retrospective relief to Plaintiff and the settlement class. With respect to prospective relief, Defendants agree to continue to cover medically necessary speech therapy without application of the Exclusion through at least December 31, 2027. Retrospective relief will be provided in the form of a settlement fund of $640,000 to reimburse settlement class members for previously uncovered costs associated with Defendants' application of the Exclusion. The settlement fund will also pay for attorney fees, litigation costs, claims administration, class notice costs, and a case contribution award. *See generally App. 1.* Based upon similar claims processes in other cases and an analysis by Plaintiff's expert, Frank G. Fox, Ph.D., Plaintiff's counsel anticipates that the settlement fund will be sufficient to pay all claims at or near their full approved value. Dkt. No. 47-4, ¶15. By any measure, this Agreement is a substantial benefit to Plaintiff and the class.

Accordingly, Plaintiff moves for an Order preliminarily approving the Settlement Agreement. Specifically, pursuant to Federal Rule of Civil Procedure 23(e), Plaintiff hereby moves the Court to:

    (a)    preliminarily approve the Settlement Agreement;

    (b)    authorize the mailing of notice to class members; and

    (c)    establish a final settlement approval hearing and process.

## II.  EVIDENCE RELIED UPON

Plaintiff relies upon the Declaration of Eleanor Hamburger (Dkt. No. 47-4). While Defendants do not oppose this motion, they do not necessarily agree with the facts or legal conclusions alleged herein.

## III.  FACTS

Plaintiff N.R. is diagnosed with ASD and was prescribed speech therapy to treat his ASD. Dkt. No. 47-4, *Exh. A.* Defendants denied coverage of N.R.'s speech therapy pursuant to the Plan's Exclusion. *Id., Exhs. B-C.*  Plaintiff exhausted his administrative appeals.  *Id.*

This case was filed on January 24, 2020, on behalf of N.R., and other similarly situated individuals. Dkt. No. 1. Plaintiff alleged that Defendants' Exclusion violated the Paul Wellstone and Pete Domenici Mental Health Parity and Addiction Equity Act of 2008 ("Mental Health Parity Act" or "Parity Act"), 29 U.S.C. § 1185a. Dkt. No. 1, ¶¶61-69. Plaintiff also alleged that Defendants violated ERISA and Parity Act disclosure requirements. *Id.*, ¶¶76-77.

Defendants filed a motion to dismiss on March 30, 2020. *See* Dkt. No. 13. After the motion was fully briefed, the Court issued its decision granting Defendants' motion. Dkt. No. 22. Plaintiff appealed the dismissal and the First Circuit Court of Appeals reversed the decision and remanded the case for further proceedings. Dkt. Nos. 26, 28.

In the meantime, Defendants removed the Exclusion from the Plan as of January 1, 2022. Dkt. No. 47-4, ¶10. This action allowed the parties to begin settlement discussions, after the case was remanded to the District Court. *Id*. The parties engaged in settlement negotiations and exchanged targeted informal discovery required to reach a settlement in this matter. *Id.*, ¶11.  In particular, based upon specific data and information provided by Defendants, Plaintiff's expert health economist modelled the anticipated claims to be submitted in a settlement claims process. *Id.*  This financial model was shared among the parties and allowed them to reach agreement on the terms of the settlement. *Id.*

3

The negotiations were at arms-length and without collusion. *Id.*, ¶12. The parties exchange multiple rounds of proposed offers and counteroffers, as well as various drafts of the proposed Settlement Agreement. *Id*. On August 12, 2022, the parties executed the Final Settlement Agreement. *See App. 1*.

### IV.  OVERVIEW OF THE SETTLEMENT AGREEMENT

This "Overview" section provides a summary of the key terms of the proposed Settlement Agreement. The "Law and Argument" section of this brief then addresses why the Court should preliminarily approve the agreement and authorize the class notice package to be sent.

**A.    Defendant Plan Will Provide Coverage for Medically Necessary Speech Therapy Without Exclusions or Limitations**

Under the terms of the Settlement Agreement, the Defendant Plan will provide coverage for speech therapy for Qualified Mental Health Conditions at least through December 31, 2027. *App. 1*, ¶6.1.

**B.    The Agreement Provides for Retrospective Relief on ABA and NDT Therapy Claims**

The Settlement Agreement provides for a $640,000 fund from which payments will be made for class members' claims for uncovered speech therapy services to treat Qualified Mental Health Conditions during the class period. *App. 1*, ¶8.

The calculation of damages in this case is based upon the same damages model that has ensured coverage of 100% of claims in other settlements. Dkt. No. 47-4, ¶15. Specifically, Plaintiff's counsel relied upon the expert analysis provided by Frank G. Fox, Ph.D., regarding the likely damages incurred for the class, and considered the claims experience in prior settlements, including but not limited to the settlements in *C.S. v. Boeing*, United States District Court for the Western District of Washington, Cause No. 2:14-00574-RSM, and *A.D. v. T-Mobile USA, Inc.,* United States District Court for the Western District of Washington, Cause No. 2:15-cv-00180-RAJ. *See id*.  These settlements

4

each provided full reimbursement to all claimants, just as Plaintiff's counsel anticipates will occur in this claims process. *Id*.

Settlement Services, Inc. ("SSI") has been selected by the parties to serve as the "Claims Processor." *App. 1,* ¶1.2. As the Claims Processor, SSI will administer the $640,000 settlement amount to be paid to settlement class members. With Class Notice, class members will receive a reimbursement claim form and instructions on how to submit a Claim. *Id.,* ¶8.5. A valid claim will need to verify the following:  (1) diagnosis with a Qualified Mental Health Condition at the time that Speech Therapy services were provided, (2) date(s) (month/year) of Speech Therapy services and provider(s) who administered the services, (3) a description of the services; (4) the unreimbursed charges or debt incurred associated with the Speech Therapy services and (5) written attestation as to the veracity of the information provided. *App. 1*, ¶8.5.1.1.

The Claims Processor will review all claims for verification of the above information. *Id.,* ¶8.5.2.1. It will also confirm that the class member was enrolled under the Plan during the class period and at time of services provided and not duplicative of claims already paid by Defendants. *Id.,* ¶¶8.5.2.2-8.5.2.3. The Claims Processor must provide a class member who has a deficient claim form an opportunity to cure any problems, and class counsel is empowered to assist the class member in making any claim. *Id.*, ¶¶8.5.3-8.5.4. Any dispute concerning whether a claim should be granted or denied is subject to binding arbitration before (ret.) Judge George Finkle. *Id.*, ¶8.5.7.

Class members will be eligible for payment from the settlement fund upon submission of a claim form verifying the elements of the claim. *App. 2*, Class Notice Package (proposed Notice, Claim Form, Certification, and Claim Form Instructions). The proposed notice and claims process are virtually identical to that approved by the Court in the *Boeing* and *T-Mobile cases*. *See* Dkt. No. 47-4, ¶14.

### C.   *Pro Rata* Reduction in the Event of Insufficient Funds

Class counsel anticipates that the settlement amount will be sufficient to pay all claims at the valid, approved amount in full. *Id.*, ¶15. However, if insufficient funds remain to pay all claimants the full approved amount after fees, costs, incentive awards and expenses, then all class members (including the Plaintiff) will receive a *pro rata* distribution of their approved claimed amount. *App. 1*, ¶¶8.7.

### D.   Reversion

If funds remain after the payment of claims, then those funds shall revert to the Plan. *App. 1*, ¶8.6.

### E.   Class Release

If approved (and in return for the benefits under the Settlement Agreement), the named Plaintiff and settlement class will release Defendants from any and all claims related to coverage of or benefits for Speech Therapy services for the treatment of Qualified Mental Health Conditions by members of the settlement class that were brought or could have been brought in this litigation. *App. 1*, ¶¶1.4, 3.

### F.   **Attorney Fees, Costs, and Incentive Awards**

The Agreement provides that class counsel may seek their lodestar attorney fees in an amount not to exceed $150,000 from the Settlement Fund and subject to Court approval. *Id.*, ¶12.1. The Agreement further provides for reimbursement of Plaintiff's actual litigation costs of $6,321.67 from the Settlement Amount, and also subject to Court approval. *Id.,* ¶12.2. An incentive award of up to $5,000 for Plaintiff will also be requested from the Court, which—if approved—would also be paid from the Settlement Fund. *Id.*, ¶12.3.

## V.  LAW AND ARGUMENT

**A.   Legal Standards for the Preliminary Approval of a Class Action Settlement Agreement**

Compromise of complex litigation is encouraged and favored by public policy. *In re Lupron(R) Mktg. & Sales Practices Litig.,* 228 F.R.D. 75, 93 (D. Mass. 2005). Federal Rule of Civil Procedure 23 governs the settlement of certified class actions and provides that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." FRCP 23(e). The Rule sets forth the following procedures:

(1)   The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.

(2)   If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.

(3)   The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.

(4)   If the class action was previously certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.

(5)   Any class member may object to the proposal if it requires court approval under this subdivision (e); the objection may be withdrawn only with the court's approval.

*Id.*

In addition, the Court must consider the protections afforded absent class members to ensure adequate compensation in return for the release of class claims. *In re Lupron,* 228 F.R.D. at 93. Generally, the Court's consideration must involve "balancing the advantages and disadvantages of the proposed settlement as against the consequences of going to trial or other possible but perhaps unattainable variations on the proffered settlement." *Robinson v. Nat'l Student Clearinghouse*, 14 F.4th 56, 59 (1st Cir.

2021). While no formal protocol for reviewing the fairness and adequacy of a proposed class settlement has been adopted by the First Circuit, this Court has relied upon the following commonly accepted criteria:

> (1)the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Lupron,* 228 F.R.D. at 94.

Judicial review of a proposed class settlement typically requires two steps: a preliminary approval review and a final fairness hearing. "At this preliminary stage of the approval process, the court must determine whether it will 'likely' be able to find that the proposed class action settlement is 'fair, adequate, and reasonable.'" *Wright v. S. N.H. Univ.,* 565 F. Supp. 3d 193, 206 (D.N.H. 2021); Fed. R. Civ. P. 23(b)(1)(B). Preliminary approval is not a commitment to approve the final settlement; rather, it is a determination that "there are no obvious deficiencies and the settlement falls within the range of reason." *Smith v. Prof'l Billing & Mgmt. Servs.,* No. 06-4453 (JEI), 2007 U.S. Dist. LEXIS 86189, at *4 (D.N.J. Nov. 21, 2007) (citing *In re Nasdaq Market-Makers Antitrust Litig.,* 176 F.R.D. 99, 102 (S.D. N.Y. 1997). There is a "presumption of reasonableness" when the parties' counsel negotiated the Agreement at arms-length and there was a thorough investigation and sufficient mutual exchange of evidence. *Wright,* 565 F. Supp. 3d at 206. At this preliminary phase, the question is not "whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1027 (9th Cir. 1998).

In this case, the parties negotiated extensively at arm's length to arrive at a comprehensive Settlement Agreement that ensures ongoing coverage through December 31, 2027 and provides back benefits to Plaintiff and the Class from January 24, 2014 to December 31, 2021. The settlement is patently fair and adequate and was not the result of collusion between the parties. The Court should preliminarily approve the settlement and direct notice of the Agreement to be send to class members and schedule a fairness hearing. At the fairness hearing, class members may object to the proposed settlement, and the Court will decide whether the settlement should be finally approved.

**B.  The Settlement Was the Result of Arm's-Length Negotiations**

This case was extensively negotiated at arm's-length and involved numerous offers and counteroffers. Dkt. No. 47-4, ¶12. The resulting Settlement Agreement closely follows similar agreements negotiated by class counsel with the Boeing, T-Mobile and other health plans. *Id.*, ¶12. Just as occurred in those other settlements, Plaintiff and his counsel agreed to a reversion of unclaimed funds—a concession that made sense in light of the risks involved in continued litigation of the case, and the prospective coverage required under the Agreement.

**C.  There Was Sufficient Discovery**

This litigation only settled after briefing on the key legal issue was considered by the trial court and then the First Circuit Court of Appeals. On remand, the parties exchanged informal evidence necessary to create a predictive model for the potential damages that could be sought by Plaintiff on behalf of the class, and the likely submission of claims in the settlement claims process. Based upon the prior experience of Plaintiff's counsel in litigating similar class action lawsuits, this information was sufficient for Plaintiff's counsel to pursue a settlement of this dispute. Dkt. No. 47-4, ¶¶11-12. Based upon Dr. Fox's model and Plaintiff's counsel's past experience with similar settlements, Plaintiff's counsel concluded that the Settlement Fund should be sufficient to cover all

potential claims at their full, approved value. *Id.*, ¶15. In sum, the informal discovery exchanged was sufficient to reach a fair and reasonable settlement of this matter.

### D. The Proposed Settlement Agreement Is Likely to be Found to be Fair, Adequate, and Reasonable

The Court should conclude that the Settlement Agreement is likely to be considered "fair, adequate and reasonable" such that the class notice, claims process and fairness hearing should proceed.

#### 1. Plaintiff's case is strong, but the risk that litigation could go on for years was also high.

Plaintiff believes that the case for prospective coverage and reimbursement of out-of-pocket payments for wrongly denied Speech Therapy claims was very strong and that he would have prevailed at trial. The proposed settlement reflects this strong position. It provides for continued coverage prospectively, as well as reimbursement of class members' claims for out-of-pocket expenses related to back benefits, payment of attorney fees, costs, and an incentive award. This resolution achieves a complete resolution for the settlement class without further delay and additional attorney fees.

#### 2. The Settlement Amount is fair, adequate, and reasonable.

The Settlement Amount of $640,000 is fair, adequate and reasonable, particularly in light of the prospective relief also obtained. Class counsel believes that the amount is sufficient to pay all valid and approved claims of settlement class members in full. Based upon enrollment data provided by the Defendants, class counsel was able to calculate the anticipated claims that are likely to be submitted under a model developed by Frank G. Fox, Ph.D., a Ph.D. health economist who has served as an expert for class counsel in more than two dozen similar cases. *See* Dkt. No. 47-4, ¶15.

Although Dr. Fox's model predicted damages that are greater than the Settlement Amount, class counsel anticipates that the valid, approved claims can be paid in full. *Id.* Dr. Fox's analysis modeled the entire universe of unpaid claims, not the class members

who are likely to submit claims. *See Chesbro v. Best Buy Stores, L.P.,* 2014 U.S. Dist. LEXIS 25404 (W.D. Wash. 2014) (participation of only 8.5% of class members is "within the normal range for participants in class actions."). Dr. Fox's analysis did not exclude claims that were paid by secondary insurance, Medicaid or other third-party payors such as the state's birth-to-three program. *Id.* He did not account for co-payments or deductibles. *Id.*

Class counsel's estimates regarding the claims processes have proven to be accurate in its other Mental Health Parity Act cases. *See id.* In fact, the settlement amount in this case is similar to the amount agreed to in *C.S. v. Boeing* and *A.D. v. T-Mobile*, as adjusted for this Plan's enrollment and class period and that the disputed services in this case only involve speech therapy. *Id.* The claims process in *Boeing* and *T-Mobile* have concluded, and every claimant was paid in full. *Id.* There is no reason to believe that the amount here will be insufficient, and every reason to believe that the same outstanding result will follow. *Id.*

Even if the Settlement Agreement results in only partial compensation to class members, it should still be approved because of the broad injunctive relief provided to class members through at least December 31, 2027. *See, e.g., Laguna v. Coverall N. Am., Inc.,* 753 F.3d 918, 924 (9th Cir. 2014); *Linney v. Cellular Alaska P'ship,* 151 F.3d 1234, 1242 (9th Cir. 1998) (in both cases, the Ninth Circuit affirmed approval of a settlement which provided broad prospective relief in addition to a cash settlement fund).

### 3. The Settlement Agreement provisions governing attorney fees and costs are fair and reasonable.

The Settlement Agreement secures an agreement from Defendants that they will not oppose a later motion for lodestar attorney fees of up to $150,000 and litigation costs up to $6,321.67. *App. 1,* ¶¶12.1, 12.2. The court need not consider on this motion whether this proposed fee and litigation costs award is the appropriate. Rather, the issue here is whether the Settlement Agreement as a whole, including its provision allowing class

11

counsel to apply for an award fees and costs is fair and reasonable. Preliminary approval of the Settlement Agreement does not bind the Court to any provision of attorney fees. "[C]ourts have an independent obligation to ensure that the [attorney fee] award, like the settlement itself, is reasonable." *Trombley v. Bank of Am. Corp.,* No. 08-cv-456-JD, 2012 U.S. Dist. LEXIS 63072, at *7 (D.R.I. May 3, 2012).

Although this is a common fund settlement, the case is also brought under ERISA, which is a fee-shifting statute. 29 U.S.C. § 1132(g). In the settlement agreement, the parties agreed to resolve the dispute with payment from the Settlement Fund of reasonable lodestar attorney fees and actual litigation costs, as approved by the Court, up to $150,000. No multiplier is sought. As a result, the Court need simply determine whether Plaintiff's counsel's hourly rates and number of hours dedicated to this case are reasonable. *Staton v. Boeing Co.*, 327 F.3d 938, 967 (9th Cir. 2003) ("As in a statutory fee-shifting case, a district court in a common fund case can apply the lodestar method to determine the amount of attorneys' fees"). No class member will pay any part of class counsel's attorney fees or litigation costs.

### 4. The Settlement Agreement's Case Contribution Award provision is "fair, adequate, and reasonable."

The Court may award the named plaintiff a Case Contribution Award for the time and effort N.R. and his parents invested in this litigation on behalf of the class. *See e.g., Gordan v. Mass. Mut. Life Ins. Co.,* No. 13-CV-30184-MAP, 2016 U.S. Dist. LEXIS 195935, at *10 (D. Mass. Nov. 3, 2016). Courts will typically consider "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, the amount of time and effort the plaintiff expended in pursuing the litigation and reasonable fears of workplace retaliation" when determining whether a case contribution award is appropriate. *Staton v. Boeing Co., 327 F.3d 938, 977 (9th Cir. 2003) citing to Cook v. Niedert,* 142 F.3d 1004, 1016 (7th Cir. 1998). "Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate

if it is necessary to induce an individual to participate in the suit." *Cook*, 142 F.3d at 1016 (approving a $25,000 incentive award).

Here, N.R. through his parents, dedicated substantial time, effort, and risk to protect the interests of the class. They gathered and organized documents related to their child's mental health condition, appealed the denial of coverage and pursued appeal of the district court's dismissal of the litigation, obtaining reversal. They were involved in all settlement negotiations. Class counsel will submit declarations from N.R.'s parents detailing their specific efforts in the application for fees, costs, and incentive awards, assuming the Settlement Agreement is preliminarily approved. At this point the Court need not decide whether such an incentive award should be ordered. The Court should conclude that the provision in the Settlement Agreement permitting class counsel to seek an incentive award of up to a total of $5,000 for N.R., the class representative, does not render the proposed Settlement Agreement unfair or a product of collusion. No class member will be responsible for payment of this incentive award.

### 5.     Class counsel recommends settlement

Class counsel is very experienced in similar class action litigation and strongly recommends that the Settlement Agreement be approved. Dkt. No. 47-4, ¶14; Dkt. No. 47-3, ¶8.

### E.     The Proposed Notice, Opportunity to Submit Objections, and Fairness Hearing Are Sufficient to Safeguard the Interests of Class Members

The Court should also approve the proposed notice and direct that it be mailed to each class member. *See App. 2*. This proposed notice adequately summarizes the Settlement Agreement, informs class members where they can get further information, explains how class members can file objections, including objection to a motion for fees and incentive award, and informs class members of the date and time of the final approval hearing. It also explains the process for submitting claims. Interested class members will have an opportunity to consult with class counsel or an attorney of their

own choosing. Those who wish can get more information about the Settlement Agreement from class counsel directly or from class counsel's website. Lastly, should any objections of substance be made, the Court can provide the objector with an opportunity to be heard at the final approval hearing.

**F.     A Final Approval Hearing Should Be Set**

Finally, class members with comments, concerns or objections to any aspect of the Settlement Agreement should be provided with an opportunity to submit written material for the Court's consideration. Class members who wish to appear in person to address the Court with any comments, concerns or objections should also be provided with an opportunity to appear at a hearing before the Court decides whether to finally approve the Settlement Agreement.

Class members who wish to appear in person should notify the Court and the parties of their desire to be heard, along with a statement of the issue or issues that they would like to address. The proposed notice and proposed order submitted with this motion require that such notice be given so that the Court and the parties can consider and address the specific issues that class members wish to raise at the hearing. Finally, the Class requests that the Court set a hearing date to consider class members' comments and to decide whether the Settlement Agreement should be finally approved and implemented.

**G.     Proposed Scheduling Order**

The Class proposes that the Court issue a scheduling order along with preliminary approval of the Settlement Agreement. The proposed Order includes a proposed schedule which includes deadlines for:  (1) sending class notice; (2) class counsel to file a motion for attorney fees, costs, and incentive awards; (3) class members to file comments and objections with the Court; and (4) the filing of a motion for final approval of the Settlement Agreement.

## VI.  CONCLUSION

Plaintiff respectfully requests that the Court:

(1)     preliminarily approve the Settlement Agreement;

(2)     authorize the mailing of notice to the settlement class members; and

(3)     establish a final settlement approval hearing and process.

DATED:  September 14, 2022.

        FAIR WORK, P.C.

        */s/ Stephen Churchill*
        Stephen Churchill (BBO #564158)
        192 South Street, Suite 450
        Boston, MA 02111
        Tel. (617) 607-3260
        Fax (617) 448-2261
        Email:  steve@fairworklaw.com

        SIRIANNI YOUTZ
        SPOONEMORE HAMBURGER PLLC

        */s/ Eleanor Hamburger*
        Eleanor Hamburger, *Admitted Pro Hac Vice*
        Richard E. Spoonemore, *Admitted Pro Hac Vice*
        3101 Western Avenue, Suite 350
        Seattle, WA 98121
        Tel. (206) 223-0303
        Email:  ehamburger@sylaw.com
        Email:  rspoonemore@sylaw.com

        Attorneys for Plaintiff and the Settlement Class

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on September 14, 2022.

                                                    */s/ Eleanor Hamburger*
                                                    Eleanor Hamburger, *Admitted Pro Hac Vice*