# APPENDIX 1

# AGREEMENT TO SETTLE CLAIMS

### *N.R. v. Raytheon Company et al., No. 1:20-cv-10153*

This Agreement to Settle Claims ("Agreement") is between Named Plaintiffs (as defined in Section1.14), the Settlement Class Members (as defined in Section1.6), and Defendants (as defined in Section 1.10). Raytheon Technologies Corporation ("RTX") is authorized to act on behalf of Defendants with respect to this Agreement, as represented below. Named Plaintiffs and RTX are referred to collectively as the "Parties." This Agreement is a full expression of the agreements between the Parties.

## RECITALS

Named Plaintiffs allege in the Action (as defined in Section 1.1), among other things, that Defendants violated the Paul Wellstone and Pete Domenici Mental Health Parity and Addiction Equity Act of 2008 ("Federal Mental Health Parity Act" or the "Act") and breached their fiduciary duties under the Employee Retirement Income Security Act of 1974, as amended ("ERISA") by excluding and/or limiting coverage and benefits under the Raytheon Health Benefits Plan (defined as the "Plan" in Section 1.11) for speech, habilitative and non-restorative therapies for the treatment of developmental mental health conditions. Defendants categorically deny these allegations and all other assertions by the Named Plaintiffs in the Action that Defendants engaged in, or are liable for, violations of law. The Action, brought in the United States District Court for the District of Massachusetts, seeks relief on behalf of a purported class of similarly situated participants and beneficiaries in the Plan.

The Parties wish to resolve all claims with respect to coverage of, or benefits for, speech and habilitative therapy services for Named Plaintiffs and the proposed Settlement Class Members and all other issues raised in and related to the Action. This Agreement is intended by the Parties to fully, finally, and forever compromise, resolve, discharge, and settle the Settlement Class Released Claims (as defined in Section 1.4) and the Named Plaintiffs' Released Claims (as defined in Section 1.15) against Defendants and other Releasees (as defined in Section 1.16) and result in the complete dismissal of the Action with prejudice, upon and subject to the terms and conditions herein.

## AGREEMENT

1.    *Definitions.*

    1.1    "*Action*" shall mean: *N.R. v. Raytheon Company, et al.*, No. 1:20-cv-10153, a purported class action pending in the United States District Court for Massachusetts.

    1.2    "*Claims Processor*" shall mean:  a claims administrator that is mutually agreed upon in writing by the Parties.

1

1.3     "*Case Contribution Award*" shall mean:  any monetary amount awarded by the Court in recognition of the Named Plaintiffs' assistance in the prosecution of this Action and payable pursuant to Section 12.3.

1.4     "*Settlement Class Released Claims*" shall mean:  any and all claims of any nature whatsoever (including those that were brought or that could have been brought against the Releasees by the Named Plaintiffs on behalf of the Settlement Class Members) relating to the coverage of, or benefits for, Speech, Habilitative and/or Non-Restorative Therapy Services through December 31, 2027, including but not limited to claims for any and all benefits, losses, opportunity losses, damages, attorney fees, costs, expenses, costs of other coverage, contribution, indemnification or any other type of legal or equitable relief, claims under ERISA, and claims under the Federal Mental Health Parity Act.

1.5     "*Class Counsel*" shall mean:   Fair Work, P.C. and Sirianni Youtz Spoonemore Hamburger PLLC.

1.6     "*Settlement Class Members*" or "*Settlement Class*" shall mean the following:

   1.6.1   All individuals who:  (1) were participants or beneficiaries under the Raytheon Health Benefits Plan at any time during the Settlement Class Period; (2) who have incurred any out-of-pocket expense for Speech, Habilitative and/or Non-Restorative Therapy Services to treat a "Qualified Mental Health Condition" (excluding expenses related to co-payments and deductibles); (3) while they were eligible for benefits under the Plan; (4) that was not covered by other health insurance and has not been paid or reimbursed by another payor, insurer, entity, plan, or person other than the individual (or a family member of that individual).

1.7     "*Settlement Class Period*" shall mean:   January 24, 2014 through December 31, 2021 inclusive.

1.8     "*Settlement Class Notice Recipients*" shall mean:  Plan participants and beneficiaries who both (i) were enrolled in the Plan at any time during the Settlement Class Period and (ii) have submitted claims to the Plan with a Qualified Mental Health Condition during the Settlement Class Period.

1.9     "*Court*" shall mean:  the United States District Court for the District of Massachusetts.

1.10    "*Defendants*" shall mean:  Raytheon Company, the Plan, and William M. Bull (plan administrator of the Plan at the time the Complaint in the Action was filed).

1.11    "*Plan*" shall mean:  Raytheon Health Benefits Plan, and any successor plan thereto.

1.12    "*Effective Date*" shall mean:  the date on which all of the conditions to settlement set forth in Section 2 have been fully satisfied or waived, as set forth in Section 9.1.

1.13    "*Final*" shall mean:  the Settlement contemplated under this Agreement shall become "Final" as described in Section 2.2.6.

1.14    "*Named Plaintiffs*" shall mean:  N▓ R▓ by and through his parents, S▓ and T▓ R▓.

1.15    "*Named Plaintiffs' Released Claims*" shall mean:  any and all claims of any nature whatsoever (including those that were brought or that could have been brought against the Releasees) by the Named Plaintiffs:  (i) relating to the coverage of, or benefits for, Speech, Habilitative and/or Non-Restorative Therapy Services through December 31, 2027, including but not limited to claims for any and all benefits, losses, opportunity losses, damages, attorney fees, costs, expenses, costs of other coverage, contribution, indemnification or any other type of legal or equitable relief, claims under ERISA, and claims under the Federal Mental Health Parity Act; and (ii) relating to the disclosure of ERISA plan documents and medical necessity criteria and other documents and information as alleged in the Complaint filed in the Action, including but not limited to claims for penalties, sanctions, attorney fees, and costs.

1.16    "*Releasees*" shall mean:  Defendants and RTX and each of their affiliates, subsidiaries, parents, fiduciaries, trustees, recordkeepers, partners, attorneys, administrators, representatives, agents, directors, officers, employees, insurers, reinsurers, predecessors, actuaries, vendors, service providers, agents, assigns, and the successors-in-interest of each of the foregoing. In the case of any individual referenced in the preceding sentence, the "Releasees" shall also include the family members, estate, heirs, executors, representatives, and administrators of the estate of such individual.

1.17    "*Qualified Mental Health Conditions*" shall mean:  the list of conditions in Appendix A to this Settlement Agreement.

1.18    "*Reimbursement Claim*" shall mean:  a claim (i) for reimbursement for expenses incurred by a Settlement Class Member for Speech, Habilitative and/or Non-Restorative Therapy Services received by the Settlement Class Member during the Settlement Class Period for treatment of a Qualified Mental Health Condition, (ii) that is submitted by a Settlement Class Member on a Claim Form for reimbursement as a part of and in accordance

with the terms of this Settlement Agreement, and (iii) that meets either of the following two sets of criteria:

    1.18.1  the claim (i) was previously submitted to the Plan and denied, (ii) is verified by sworn attestation of the Settlement Class Member on the Claim Form that it was not covered by other health insurance and has not been paid by or reimbursed by another payor, insurer, entity, plan, or person other than the Settlement Class Member (or family member of that Settlement Class Member); and (iii) is verified by sworn attestation of the Settlement Class Member on the Claim Form that it was paid by the Settlement Class Member (or a family member of that Settlement Class Member) submitting the claim for reimbursement and/or the Settlement Class Member continues to owe the unpaid amount;

    1.18.2  the claim (i) was not previously submitted to the Plan for consideration; (ii) is verified by sworn attestation of the Settlement Class Member on the Claim Form that it is an uncovered out-of-pocket expense that was incurred by the Settlement Class Member during the Settlement Class Period while the Settlement Class Member submitting the claim was covered by the Plan; (iii) is verified by sworn attestation of the Settlement Class Member on the Claim Form that it was not covered by other health insurance and has not been paid or reimbursed by another payor, insurer, entity, plan, or person other than the Settlement Class Member (or family member of that Settlement Class Member); and (iv) is verified by sworn attestation of the Settlement Class Member on the Claim Form that it was paid by the Settlement Class Member submitting the claim for reimbursement (or family member of that Settlement Class Member), and/or the Settlement Class Member continues to owe the unpaid amount.

1.19    "*Settlement*" shall mean:  the settlement to be consummated under this Agreement.

1.20    "*Settlement Amount*" shall mean:  $640,000.

1.21    "*Speech, Habilitative and/or Non-Restorative Therapy Services*" shall mean:  any service (i) that was performed to treat a Qualified Mental Health Condition; (ii) that is described by one of the following CPT codes:  92507, 92508, 92521, 92522, 92523, 92524, 92526, and 96105; and (iii) that was excluded from coverage under the Plan during the Settlement Class Period under one or more of the exclusions referenced as the "Non-Restorative Exclusions" in the Complaint filed in the Action.

1.22    "*Taxes*" shall mean:  any and all taxes, fees, levies, duties, tariffs, imposts, and other charges of any kind (together with any and all interest, penalties,

additions to tax and additional amounts imposed with respect thereto) imposed by any governmental authority.

1.23   "*Claim Form*" shall mean:  the claim form issued to Settlement Class Members, and described in Section 8.5.1, in connection with the Class Notice described in Sections 2.2.2 and 2.2.3.

1.24   "CAFA Notice" shall mean:  the notice of the proposed settlement in compliance with the requirements of the Class Action Fairness Act, 28 U.S.C. § 1715.

## 2.   *Conditions to Effectiveness of the Settlement.*

2.1   *General*.  The Settlement provided for in this Agreement shall become effective when each and every one of the following conditions in Sections 2.2 and 2.3 have been fully satisfied or waived as set forth in Section 9.1.

2.2   *Court Approval*.  The Settlement contemplated under this Agreement shall be approved by the Court as provided in this Agreement.  The Parties agree jointly to recommend to the Court that it approve the terms of the Agreement and the Settlement contemplated hereunder.  The Parties agree to promptly take all steps and efforts contemplated by the Agreement, including facilitating or completing the following:

2.2.1   *Certification of Settlement Class*.  The Court shall have certified the Settlement Class for settlement purposes only.  Class Counsel shall make a motion for certification of the Settlement Class under Federal Rule of Civil Procedure 23(b)(1) as part of the motions to approve this Agreement.  In agreeing to the certification of this class for settlement purposes, Defendants and RTX do not admit that the Named Plaintiffs could have met the requirements for class certification for this particular class under Rule 23 in the normal course of the litigation.

2.2.2   *Motion for Preliminary Approval and Notices*.  The Court shall have preliminarily approved the Agreement ("Preliminary Approval Order") and authorized the issuance of notice ("Settlement Class Notice") to the Settlement Class Notice Recipients.  Class Counsel shall make a motion for preliminary approval, for authorization to send the Settlement Class Notice, and for approval of and continuing jurisdiction over the proposed settlement claims process ("Preliminary Motion").  The Settlement Class Notice shall be in a form agreed upon by the Parties and submitted for approval by the Court with the Preliminary Motion.  In the event that the Parties do not agree upon the form of a Settlement Class Notice, they will "meet and confer" to attempt to resolve the dispute.  If they are

unable to resolve the dispute after the conference, then the Court will decide the content of the Settlement Class Notice. The Preliminary Motion shall include a proposed form of Preliminary Approval Order that shall be agreed upon by the Parties. In the event that the Parties do not agree upon the proposed form of Preliminary Approval Order, they will meet and confer to attempt to resolve the dispute. If they are unable to resolve the dispute after the conference, the Parties may submit competing forms of the order to the Court. The Court must approve the form of the Settlement Class Notice and conclude that the notice to be sent fairly and adequately describes the terms of the Agreement, including the estimated attorney fees and litigation costs to be sought by Class Counsel. The Settlement Class Notice must also establish a deadline for Class Counsel to move for payment of attorney fees and litigation costs, give notice of the time and place of the hearing for final approval of the Settlement, and describe how a Settlement Class Member may comment on, object to, or support the Settlement.

2.2.3   *Settlement Class Notice.*

2.2.3.1 By the date and in the manner set forth in this Section 2.2.3.1 (or in any different manner set forth by the Court in its Preliminary Approval Order), RTX and Defendants shall provide the necessary information (to the extent that information is maintained in the records of RTX and Defendants) to the Claims Processor so that the Claims Processor may deliver the Court-approved notice to the Settlement Class Notice Recipients. For those Settlement Class Notice Recipients for whom RTX and Defendants have an e-mail address on file, the Settlement Class Notice shall be sent by e-mail to the e-mail address that Defendants have on file for the Settlement Class Notice Recipient. For those Settlement Class Notice Recipients for whom RTX and Defendants do not have a current email address on file, the Settlement Class Notice shall be sent by e-mail to the last known e-mail address of the Settlement Class Notice Recipient, and if there is no last known e-mail address, then the Settlement Class Notice shall be sent by direct first-class United States mail to the last address (if any) for that Settlement Class Notice Recipient in the records of RTX and Defendants, forwarding requested. Notice to a current or former Plan participant shall be deemed notice to each Settlement Class Notice Recipient who was covered by the Plan through the participant. If an e-mail is sent to a Settlement Class Notice Recipient pursuant to this Section 2.2.3.1 and the e-mail is returned as undeliverable, the Settlement Class Notice shall be sent to the last known

address of that Settlement Class Notice Recipient by direct first-class United States mail to the last address (if any) for that Settlement Class Notice Recipient in the records of RTX and the Plan, forwarding requested.

2.2.3.2 Not later than the date when the Preliminary Motion is filed, Class Counsel shall create a webpage on the firm website which contains at least the following material:

a. A description of the Action, including a summary of the litigation.

b. The Settlement Class definition.

c. A timeline and schedule of events, including deadlines for submitting claims and objecting.

d. How to contact Class Counsel for additional information.

e. Settlement documents, or links to documents, including:

  i. Settlement Class Notice;

  ii. Instructions to Claim Forms;

  iii. Claim Forms;

  iv. Motions for preliminary approval; and

  v. All court orders on preliminary approval.

f. Litigation documents, or links to documents, including:

  i. Plaintiffs' Complaint and any materials filed with the Complaint.

g. Updates. The webpage shall be updated as the following become available:

  i. Class Counsel's application(s) for attorney fees, costs, and Case Contribution Award (with all supporting materials); and

  ii. Motion(s) for Final Approval of the Settlement (including any objections and

Class Counsel's response to those objections).

2.2.4   *Fairness Hearing*.  On the date set by the Court in its Preliminary Approval Order, the Parties shall participate in a hearing ("Fairness Hearing") during or after which the Court will determine by order (the "Final Order") whether:  (i) the proposed Settlement between the Parties is fair, reasonable, and adequate and should be approved by the Court; (ii) final judgment should be entered ("Judgment"); (iii) the requirements of Rule 23 and due process have been satisfied in connection with the distribution of the Settlement Class Notice; (iv) to approve the payment of attorney fees and costs to Class Counsel and a Case Contribution Award as set forth in this Agreement pursuant to Sections 12.1, 12.2, and 12.3; and (v) that notice to the appropriate state and federal officials has been provided as required by CAFA through the mailing of the CAFA Notice and that Defendants have satisfied their obligations pursuant to 28 U.S.C. § 1715.  The Parties covenant and agree that they will reasonably cooperate with one another in obtaining an acceptable Final Order at the Fairness Hearing that contains the terms described in this section and will not do anything inconsistent with obtaining such a Final Order.

2.2.5   *Motion for Final Approval*.  On the date set by the Court in its Preliminary Approval Order, Named Plaintiffs shall have filed a motion ("Final Approval Motion") for a Final Order which contains the terms described in Section 2.2.4.  The Parties shall confer and agree on the terms of the proposed Final Order that Named Plaintiffs will submit to the Court with the Final Approval Motion.

2.2.6   *No Appeal or Appeal is Final*.  If the Settlement is finally approved, this Settlement will be Final and Effective on the date:  (i) that time for appeal of the Final Order has expired, if no appeal has been taken; or (ii) if there has been an appeal, (a) that the appeal has been decided by all appellate courts without causing material change in the Final Order, or (b) that the Final Order has been upheld on appeal without material change and is no longer subject to appellate review by further appeal or writ of certiorari.

2.3   *No Termination*.  The Settlement shall not have terminated pursuant to Section 10.

**3.   *Releases.***

3.1   *Releases of the Releasees.*  Upon the Effective Date, Named Plaintiffs, on their own behalf and, to the full extent permitted by law, on behalf of the Settlement Class Members, absolutely and unconditionally release and

forever discharge Releasees from any and all Settlement Class Released Claims (whether known or unknown and whether supported or unsupported) that Named Plaintiffs or the Settlement Class have, ever had, or will have (whether directly, indirectly, derivatively, or in any other capacity).  Provided, however, that (i) in the event Defendants impose treatment limits on Speech, Habilitative and/or Non-Restorative Therapy Services after December 31, 2027, claims relating to any such exclusions or limitations that may be imposed are not released, and (ii) Named Plaintiffs and Settlement Class Members may continue to bring claims arising after the Effective Date regarding denials of speech and habilitation services under the terms of the Plan to the extent a denial is (a) inconsistent with the terms of this Agreement or (b) based on a reason not addressed by this Agreement, such as an individual claim denial based on lack of medical necessity or an exclusion of experimental/investigational treatment.

3.2     Named Plaintiffs and Settlement Class Members shall be conclusively deemed to have covenanted not to sue Releasees for any and all Settlement Class Released Claims and shall forever be enjoined and barred from asserting any Settlement Class Released Claims.  This in no way applies to any action taken by the Named Plaintiffs or Settlement Class Members to enforce the terms of the Agreement.  Provided, however, that in the event Defendants impose treatment limits on Speech, Habilitative and/or Non-Restorative Therapy Services after December 31, 2027, Named Plaintiffs and Settlement Class Members are not covenanting not to sue for claims relating to any such treatment limitations.

3.1     Further, Named Plaintiffs absolutely and unconditionally release and forever discharge Releasees from any and all Named Plaintiffs' Released Claims (whether known or unknown and whether supported or unsupported) that Named Plaintiffs have, ever had, or will have (whether directly, indirectly, derivatively, or in any other capacity).  Named Plaintiffs shall be conclusively deemed to have covenanted not to sue Releasees for any and all Named Plaintiffs' Released Claims and shall forever be enjoined and barred from asserting any Named Plaintiffs' Released Claims.

3.2     *Defendants' Releases of Named Plaintiffs, the Settlement Class, and Class Counsel.*  Upon the Effective Date of Settlement, Defendants, to the full extent permitted by law, absolutely and unconditionally release and forever discharge the Named Plaintiffs, the Settlement Class Members, and Class Counsel from any and all claims based on the institution or prosecution of the Action.

3.3     Defendants shall be conclusively deemed to have covenanted not to sue Named Plaintiffs, the Settlement Class Members, and Class Counsel for any and all released claims relating to institution or prosecution of the Action.  This in no way applies to any action taken by Defendants to enforce the terms of the Agreement.

4. ***Representations and Warranties.***

    4.1   *The Named Plaintiffs.*  Named Plaintiffs represent and warrant that they have not assigned or otherwise transferred any interest in any Named Plaintiffs' Released Claims against any Releasees, and further covenant that they will not assign or otherwise transfer any interest in such claims.

    4.2   *The Parties.*  The Parties, and each of them, represent and warrant as follows: (i) they are voluntarily entering into this Agreement as a result of arm's-length negotiations; (ii) in executing this Agreement, they are relying upon their own judgment, belief, and knowledge, and the advice and recommendations of their own counsel, concerning the nature, extent, and duration of their rights and claims under this Agreement and regarding all matters which relate in any way to the subject matter of this Agreement; (iii) they have carefully read the contents of this Agreement; (iv) they have made such investigation of the facts pertaining to the Settlement, this Agreement, and all of the matters pertaining to the Settlement and Agreement, as they deem necessary or appropriate (including the value of the Settlement Class Released Claims, and in the case of Named Plaintiffs, the value of the Named Plaintiffs' Released Claims); (v) this Agreement is signed freely by each person executing this Agreement on behalf of each party; and (vi) each individual executing this Agreement on behalf of any other person has the authority to do so.

    4.3   *Settlement Class Members.*  As a condition of receiving any monetary payment pursuant to this Agreement (and in addition to the other requirements set forth in Section 8.5), a Settlement Class Member must represent and warrant, on the Claim Form submitted with respect to his or her claim, that he or she (i) has not assigned or otherwise transferred any interest in any Settlement Class Released Claims against any Releasees; (ii) will not assign or otherwise transfer any interest in any Settlement Class Released Claims; and (iii) the out-of-pocket expenses submitted as part of the claims process have not been paid by any other entity, payor, plan, or person, apart from a family member.

5. ***No Admission of Liability.***  The Parties understand and agree that this Agreement embodies a compromise and settlement of disputed claims, and that nothing in this Agreement shall be deemed to constitute an admission of any liability or wrongdoing by any of the Releasees.  Neither the fact nor the terms of this Agreement shall be offered or received in evidence in any action or proceeding for any purpose, except in an action or proceeding to enforce this Agreement or arising out of or relating to the Final Order and motions for preliminary and final approval.

6. ***Coverage Agreements.***

    6.1   *Removal of Speech, Habilitative and Non-Restorative Therapy Exclusions.*

6.1.1    Defendants agree that they will not include a Speech, Habilitative or Non-Restorative Therapy Exclusion of Qualified Mental Health Conditions in the Plan through December 31, 2027, except as provided in Section 6.2 or Section 7.

6.1.2    Notwithstanding the provisions of this Section 6 or any other provision of this Agreement, Defendants shall have the full authority and right to amend the Plan without restriction as a result of this Agreement after December 31, 2027.   Named Plaintiffs and Settlement Class Members shall have full authority to bring a claim regarding conduct on or after the date such amendment is effective if any such amendment does not comport with the law.

6.2    *Permissible Changes in Coverage*.   Defendants may alter coverage of Speech, Habilitative and/or Non-Restorative Therapy Services under this Agreement if any of the conditions listed below occur.   Such alteration of coverage shall not be an event of termination or a violation of this Agreement.    If such alteration occurs before December 31, 2027, Defendants shall provide notice of any such change to Class Counsel at least thirty (30) days prior to implementation or within a reasonable time given the circumstances.

6.2.1    If applicable federal or state law, legislation, or regulation regarding coverage of Speech, Habilitative and/or Non-Restorative Therapy Services changes in any manner that would make the terms of this Agreement a violation of the law, Defendants shall alter coverage in order to comply with the law.

6.2.2    If the Federal Mental Health Parity Act is repealed or modified in any manner that creates legal or coverage obligations that differ from the terms of this Agreement, the Defendants may alter coverage of Speech, Habilitative and/or Non-Restorative Therapy Services as long as changes comply with the Federal Mental Health Parity Act after its modification or other existing federal law in place after any repeal of the Federal Mental Health Parity Act.   In the event of the repeal or modification of the Federal Mental Health Parity Act, such alterations could include the elimination of the coverage for Speech, Habilitative and/or Non-Restorative Therapy Services by Defendants, or the expansion of coverage.

6.2.3    If the Plan is changed to no longer provide mental health benefits, whether through modification or termination of the Plan.

6.3    *Modification of Releases If Defendants Alter Coverage*.   In the event that Defendants change or alter their coverage of Speech, Habilitative and/or Non-Restorative Therapy Services pursuant to Section 6.2, then Named Plaintiffs and all Settlement Class Members at the time of the change or

alteration shall, notwithstanding any releases provided in this Agreement, be permitted to seek any relief, including legal or equitable relief, regarding conduct on or after the date of such change or alteration in order to challenge Defendants' decision to invoke this section.

7. **_Coverage Modification Based on Subsequent Judicial Decisions and Statutory/Regulatory Changes._**

7.1 _Reduction or Elimination of Coverage Obligations._  In the event an applicable statute, regulation, or Final Decision from the First Circuit Court of Appeals or the Supreme Court of the United States reduces or eliminates some or all of Defendants' obligations to cover Speech, Habilitative and/or Non-Restorative Therapy Services for Qualified Mental Health Conditions, Defendants may reduce or eliminate the coverage as stated in this Agreement as permitted by the Federal Mental Health Parity Act, including its related regulations or Final Decision.  A Final Decision is a decision of the Supreme Court of the United States or a decision by the First Circuit Court of Appeals that is not appealed within the time permitted for such appeals or that, if appealed, is not accepted for review.

7.2 _Increase in or New Coverage Obligations._  In the event an applicable statute, regulation, or Final Decision from the First Circuit Court of Appeals or the Supreme Court of the United States increases or imposes new obligations to cover Speech, Habilitative and/or Non-Restorative Therapy Services for Qualified Mental Health Conditions, beyond those required in this Agreement, Defendants must provide the coverage required by the statute, regulation, or Final Decision to the extent required by the Federal Mental Health Parity Act, including its related regulations.

8. **_Reimbursement Claims Processing._**

8.1 _Settlement Fund._

8.1.1 The Parties agree that the Claims Processor shall establish a trust that shall be the "Settlement Fund" for purposes of this Agreement. No later than the date of the Preliminary Approval Order, the Parties may agree in writing that the Settlement Fund shall be established as, and treated at all times as, a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1, _et seq._  The Settlement Fund shall be established no later than fourteen (14) days after the date of the Preliminary Approval Order.

8.1.2 References in this Agreement to actions and responsibilities of the Claims Processor shall be to those actions and responsibilities it shall take in its position as administrator of the Settlement Fund.

8.1.3 If the Settlement Fund is established as a qualified settlement fund, the Parties agree that for purposes of Section 468B of the Internal

Revenue Code of 1986, as amended (the "Code") and the Treasury Regulations promulgated thereunder, RTX shall be treated as the "transferor" within the meaning of Treasury Regulation §1.468B-1(d)(1), and that the Claims Processor shall be the "administrator" of the Settlement Fund within the meaning of Treas. Reg. §1.468B-2(k)(3).

8.1.4   If the Settlement Fund is established as a qualified settlement fund, the Parties agree the Claims Processor shall, in establishing the Settlement Fund, make any such elections as necessary or advisable to carry out the "relation back election" (as defined in Treas. Reg. §1.468B-1(j)(2)(i)) back to the earliest permitted date.  Such elections shall be made in compliance with the procedures and requirements contained in such regulations.  It shall be the responsibility of the Claims Processor to timely and properly prepare and deliver the necessary documentation for signature by all necessary Parties, and to cause the appropriate filing to occur.

8.1.5   If the Settlement Fund is established as a qualified settlement fund, the Parties intend that the transfers to the trust described in this paragraph will satisfy the "all events test" and the "economic performance" requirement of Code §461(h)(1) and Treas. Reg. §1.461-1(a)(2).

8.1.6   The Claims Processor shall be responsible for filing tax returns for the Settlement Fund, if appropriate, including application for employer identification numbers in accordance with Treas. Reg. §1.468B-2(k)(4).  All tax expenses shall be paid out of the Settlement Fund; in all events, the Releasees shall not have any liability or responsibility for any Taxes or tax expenses or the filing of any tax returns or other documents with the Internal Revenue Service or any other state or local taxing authority.  Taxes and tax expenses shall be paid out of the Settlement Fund in a timely manner without prior order from the Court, and the Claims Processor shall be obligated to withhold from distribution any funds necessary to pay such amounts.

8.2   *Payment of Settlement Amount.*  RTX and Defendants shall not be required to pay any amounts under this Agreement directly to Named Plaintiffs, Settlement Class Members, or Class Counsel.  RTX and Defendants shall not be required to pay any amounts to the Settlement Fund under this Agreement, except as stated in this Section 8.2.  RTX shall cause the Settlement Amount to be paid to the Settlement Fund in multiple parts as follows:

8.2.1   Within thirty (30) days of the Preliminary Approval Order, Defendants shall cause $100,000 of the Settlement Amount to be

paid into the Settlement Fund to effectuate the Class Notice and Claims Process; and

8.2.2   Within fifteen (15) days of the Effective Date, Defendants shall cause the remaining $540,000 of the Settlement Amount to be paid into the Settlement Fund.

8.3   *Settlement Amount is Payment for Claims, Attorney Fees and Costs, Case Contribution Award and the Cost of Claims Administration and Notice*.  The Settlement Fund shall cover the cost of claims administration, attorney fees as set forth in Section 12.1, litigation costs as set forth in Section 12.2, the case contribution award as set forth in Section 12.3, arbitration costs as set forth in Section 8.5.7, costs associated with copying and delivery of the Settlement Class Notice, payments to Settlement Class Members for valid and approved Reimbursement Claims as set forth in Section 8.5, and any Taxes due on the Settlement Fund.  RTX and Defendants and Releasees shall not be liable for any Taxes that any person may owe due to the receipt of any portion of the Settlement Fund.

8.4   *Distribution of Settlement Fund*.  The Settlement Fund will be used to pay the items identified in Section 8.3.

8.5   *Claims Processing*.  Reimbursement Claims shall be processed as follows:

8.5.1   *Submission of Claims*.  Settlement Class Members will be provided with a Claim Form.

8.5.1.1 *Elements of Claim*.   The Claim Form shall require the Settlement Class Member (or his or her designee) to indicate and verify by sworn attestation (i) the diagnosis of the Settlement Class Member with a Qualified Mental Health Condition at the time the services described on the Claim Form were provided; (ii) the date(s) of the Speech, Habilitative and/or Non-Restorative Therapy Services to treat the Qualified Mental Health Conditions (at least month/year but also day if reasonably available) and the name(s) and contact information (to the extent that contact information is available) of the provider(s) who administered the services; (iii) a description of the services; (iv) the unreimbursed charges or debt incurred associated with the Speech, Habilitative and/or Non-Restorative Therapy Services for Qualified Mental Health Conditions; and (v) each of the items to be verified by sworn attestation on the Claim Form as required under Section 1.18.1 or Section 1.18.2, as applicable.  The Claim Form shall also include the representations and warranties required under Section 4.3.

8.5.1.2 *Documentation Required.*   The following documentation will be required for a Reimbursement Claim to be considered valid:

a.   Diagnosis, by a medical doctor or other qualified health care professional, of the Settlement Class Member with a Qualified Mental Health Condition at the time the services described in the Claim Form were provided;

b.   The date(s) of Speech, Habilitative and/or Non-Restorative Therapy Services for Qualified Mental Health Conditions (at least month and year but also day if reasonably available), and a description of the services provided, which can be evidenced by clinical notes, an appointment schedule/log/calendar created at the time of treatment, invoices seeking payment that include dates of service, paid checks with notations regarding dates of treatment, a signed letter from the provider, (with respect to the description of the services) the CPT code in the invoice or other communication from the provider, or other evidence of similar reliability; and

c.   The unreimbursed charges or debt incurred associated with Speech, Habilitative and/or Non-Restorative Therapy Services for Qualified Mental Health Conditions, which can be evidenced by cancelled checks, credit card account statements, provider ledgers, invoices stamped "paid," checking account statements, signed letters from the provider or the provider's employer documenting the amount paid or debt incurred (so long as the letter connects payments/debt with dates of service by at least month and year) or other evidence of similar reliability.

8.5.2   *Review of Claim Forms.*  In addition to other processes described in this Agreement (e.g., Section 8.5.5), the Claims Processor shall follow the following process in reviewing Claim Forms and approving the amounts of any Reimbursement Claims:

8.5.2.1 The Claims Processor shall review the Claim Forms to confirm that the items indicated in Sections 8.5.1 are present in the Claim Form and accompanying proof of claims.

8.5.2.2 The Claims Processor shall also confirm that the Settlement Class Member was enrolled under the Plan during the Settlement Class Period and covered by this Agreement.

8.5.2.3 The Claims Processor shall further confirm with Defendants that the claimed sums are not duplicative of claims previously paid by Defendants.  If the Claims Processor determines that a claim may be submitted to the Plan for reimbursement under and subject to the existing terms of the Plan, the Claims Processor will instruct the Settlement Class Member who submitted the claim to file a claim with the Plan in accordance with the Plan's generally applicable claims process.

8.5.2.4 If a claim is approved, the Claims Processor shall deduct 20% from the amount of the claim.  The Parties have agreed to this reduction to all approved claims to reflect the estimated, aggregate co-payments and deductibles that would have been paid by the Settlement Class Members had their claims been covered by the Plan.  This reduction shall apply to each approved claim without proof or demonstration that that particular claim would have been subject to co-payments and/or deductions if it had been covered by the Plan.

8.5.2.5 The Claim Processor also shall receive verification from the Settlement Class Member or his/her designee that the claims were actually incurred by the Settlement Class Member (or a family member of that Settlement Class Member) submitting the claim for reimbursement and that the claims were not covered by other health insurance and have not been paid by or reimbursed by another payor, insurer, entity, plan, or person other than the Settlement Class Member (or family member of that Settlement Class Member).

8.5.3   *Opportunity to Cure*.  In the event of a deficiency of proof, the Claims Processor shall provide the Settlement Class Member with an explanation of the deficiency and a reasonable opportunity to cure the deficiency.

8.5.4   *Assistance in Perfecting Claim*.  A copy of all deficiency notices with personally identifiable information removed or redacted and a unique number identifier assigned by the Claims Processor shall also be provided to Class Counsel, who may assist the Settlement Class Member in curing any problems with the Settlement Class Member's claim via communication with, or through, the Claims Processor or with the Settlement Class Member directly, provided

the Settlement Class Member provides the Claims Processor with HIPAA-compliant authorization to release his or her contact information and other personal health information to Class Counsel or if he or she contacts Class Counsel directly.

8.5.5    *Disposition of Reimbursement Claims*.

8.5.5.1 Within seven (7) days of determining a disposition for each submitted claim (denied, approved at a certain dollar amount, etc.), the Claims Processor shall provide the Settlement Class Member and counsel for the Parties with notice of the disposition.  The notice will provide the Settlement Class Member and counsel for the Parties with information on how to appeal the decision of the Claims Processor to the Arbitrator and a deadline of at least thirty (30) days to submit an appeal to the Claims Processor.  The Claims Processor will provide any appeal materials received to counsel for the Parties within two (2) business days of receipt of the materials.  Class Counsel may assist the Settlement Class Member with the appeal.  The Claims Processor and the Parties' counsel will work in good faith to present the appeals together to the Arbitrator in a reasonable time after all appeals have been received or the deadline for submitting the last appeal has passed.

8.5.5.2 Payment on a claim may not be made until the Settlement Agreement is Final and Effective.

8.5.5.3 Within fourteen (14) days of any payment, the Claims Processor shall notify counsel for the Parties of the fact of payment, the date of payment, and the amount of payment.

8.5.6    *Compliance*.   Counsel for the Parties shall be provided with information by the Claims Processor in order to confirm and ensure compliance with the requirements of this Agreement.

8.5.7    *Arbitration*.   Consistent with the timeframes in Section 8.5.5.1, Defendants, Class Counsel, or a Settlement Class Member may challenge the decision of the Claims Processor.  Any dispute over whether a claim is valid or not with respect to the payment of Reimbursement Claims shall be submitted for final and binding arbitration before Judge George Finkle (ret.) at JDR in Seattle, Washington.  The type and manner of the arbitration (in-person, by phone, or on the papers) shall be determined by the arbitrator in his sole discretion.  Expenses of the arbitrator shall be paid by the Claims Processor from the Settlement Amount.  If for any reason

Judge Finkle becomes unavailable to arbitrate any of the claims, the Parties will agree in writing to a different arbitrator.

8.5.8   *Payment of Valid Reimbursement Claims.*  Subject to termination pursuant to Section 10, the Claims Processor shall pay all approved Reimbursement Claims from the Settlement Amount through the Settlement Fund consistent with the timeframe set forth in Section 8.5.5.

8.5.9   *Payment to Settlement Class Members or Designees*.  Payment of valid and approved Reimbursement Claims shall be made to the Settlement Class Member or his or her designee if the Settlement Class Member notifies the Claims Processor in writing to make such a payment to his or her designee.

8.6   *Reversion*.  If, after the payment of all items identified in Section 8.3, funds remain in the Settlement Fund, then the Claims Processor shall cause the Settlement Fund to return those funds (minus any court-approved or agreed holdback for expenses incurred but not yet paid, Taxes, and estimated administrative expenses necessary to complete the activities of and close the Settlement Fund) to RTX within sixty (60) days after Class Counsel submits a final report to the Court regarding Claims processing and disbursement of funds from the Settlement Fund.  This final report shall be submitted by Class Counsel a reasonable time after the Parties are notified by the Claims Processor that the last claim has been paid and/or the last appeal determined by the Arbitrator.  Any part of the holdback remaining after all expenses and other liabilities of the Settlement Fund are paid shall be returned to RTX upon closure of the Settlement Fund.

8.7   *Pro Rata Distribution.*  If, (i) after payment of the cost of claims administration, attorney fees as set forth in Section 12.1, litigation costs as set forth in Section 12.2, the case contribution award as set forth in Section 12.3, arbitration costs as set forth in Section 8.5.7, costs associated with copying and delivery of the Settlement Class Notice, and any Taxes due on the Settlement Fund; and (ii) after taking into account any court-approved or agreed holdback for expenses incurred but not yet paid, Taxes, and estimated administrative expenses necessary to complete the activities of and close the Settlement Fund; (iii) insufficient funds remain in the Settlement Fund to pay all valid and approved Reimbursement Claims in full (at 80% to account for co-payments and deductibles as described in Section 8.5.2.4); then (iv) each such valid and approved Reimbursement Claim shall be reduced and paid on a *pro rata* basis with all other valid and approved Reimbursement Claims from the amount remaining in the Settlement Fund after taking into account clauses (i) and (ii) of this Section.

8.8   *Payment of Claims for Named Plaintiffs.*  The Parties agree that the documented amount of unreimbursed Speech, Habilitative and/or Non-

Restorative Therapy Services for Qualified Mental Health Conditions incurred by the Named Plaintiffs is $8,470.00.  The Parties agree that after the 20% is deducted (as described in Section 8.5.2.4), the valid claim for the Named Plaintiffs is $6,776.00.

This amount shall be paid from the Settlement Fund and be paid no sooner than fifteen (15) days after the Settlement Agreement is Final and as soon as practicable thereafter.  Named Plaintiffs agree not to submit any Claim Forms for Reimbursement Claims.  Named Plaintiffs' valid claim will be subject to *pro rata* reduction, if required under Section 8.7.

9.    ***Effective Date of Settlement.***

9.1    *Effective Date*.  This Agreement shall be fully effective and binding on the date on which all of the conditions to the Settlement set forth in Section 2 have been fully satisfied or expressly waived by the Parties in writing.

9.2    *Disputes Concerning the Effective Date of Settlement*.  If the Parties disagree as to whether each and every condition set forth in Section 2 has been satisfied or waived, they shall promptly confer in good faith and, if unable to resolve their differences within ten (10) business days thereafter, shall present their dispute for mediation and/or arbitration under Section 14.1.

10.    ***Termination of Agreement to Settle Claims Due to Lack of Approval.***

10.1    *Court Rejection*.  With the exception of approval of the form of the Settlement Class Notice, if the Court declines, in whole or in part, to preliminarily or finally approve the Settlement as written, then this Agreement shall automatically terminate and thereupon become null and void.  In the event the Court approves a settlement that differs from the terms in this Agreement (whether material or immaterial), in whole or in part, or does not afford Defendants and other Releasees a complete release, then either RTX or Class Counsel may, in their sole and absolute discretion, terminate this Agreement by delivering a notice of termination to counsel for the opposing party within fifteen (15) court days of the Court's order.

10.2    *Court of Appeals Reversal*.  If the Court of Appeals reverses the Court's order approving the Settlement, then, provided that no appeal or other request for review is then pending from such a ruling before the Court of Appeals or the United States Supreme Court, this Agreement shall automatically terminate and thereupon become null and void on the 31st day after issuance of the mandate of the Court of Appeals.

10.3    *Supreme Court Reversal*.  If the Supreme Court of the United States reverses the Court's order approving the Settlement, then this Agreement shall

automatically terminate and thereupon become null and void on the 31st day after issuance of the Supreme Court's mandate.

10.4    *Pending Appeal*.  If an appeal is pending of an order declining to approve the Settlement, this Agreement shall not be terminated until final resolution of dismissal of any such appeal, except by written agreement of the Parties.

**11.**    ***Consequences of Termination.***  If the Agreement is terminated and rendered null and void for any reason, then the following shall occur:

11.1    *Reversion of Action*.  The Action shall revert to its status as of June 1, 2022, and the fact and terms of this Agreement shall not be used in the Action for any purpose.

11.2    *Releases and Terms Void*.  All Releases given or executed pursuant to this Agreement shall be null and void, and none of the terms of the Agreement shall be effective or enforceable.

11.3    *Termination and Liquidation of the Settlement Fund*.  No later than ten (10) days after the date of termination of the Agreement, the Claims Processor shall terminate the Settlement Fund and pay to RTX all funds then remaining in the Settlement Fund.

**12.**    ***Attorney Fees, Litigation Expenses, and Case Contribution Awards.***

12.1    *Attorney Fees*.  Class Counsel's fees shall be based on their reasonable lodestar (hourly rate multiplied by hours worked), but shall be no more than $150,000, to be reimbursed out of the Settlement Amount, subject to the Court's review and approval.  Class Counsel shall petition the Court as part of the Fairness Hearing for approval of these fees, and Defendants and their representatives expressly agree not to contest or take any position with respect to these fees.

12.2    *Litigation Costs*.  Class Counsel's actual out-of-pocket litigation costs of $6,321.67 shall be reimbursed out of the Settlement Amount, subject to the Court's review and approval.  Defendants will take no position with respect to the application for litigation costs submitted to the Court for review and approval.

12.3    *Case Contribution Award*.  Subject to review and approval by the Court, a Case Contribution Award of $5,000.00 total shall be paid out of the Settlement Amount to the Named Plaintiffs.  Defendants will take no position with respect to the application for Case Contribution Awards submitted to the Court for review and approval.

**13.**    ***Press Release.***  None of the Parties or their counsel will issue any proactive statements to the media.  If any of the Parties are contacted by the media, the Parties

can issue mutually agreed-upon reactive statements or agree not to provide any statements to the media.

14. ***Miscellaneous.***

14.1 *Dispute Resolution*.  The Parties agree that any dispute regarding the terms, conditions, releases, enforcement, or termination of this Agreement shall be resolved by a mutually agreed upon mediator in Seattle, Washington or Boston, Massachusetts, through mediation and, if mediation is unsuccessful, through binding arbitration before Judge George Finkle (ret.) at JDR in Seattle, Washington.  If Judge Finkle is unavailable, the Parties shall arbitrate before another mutually agreed upon arbitrator.

14.2 *Governing Law*.  This Agreement shall be governed by the laws of State of Massachusetts without regard to conflict of law principles, unless preempted by federal law.

14.3 *Amendment*.   Before entry of the Preliminary Approval Order, this Agreement may be modified or amended only by written agreement signed by or on behalf of all Parties.  Following entry of the Preliminary Approval Order, this Agreement may be modified or amended only by written agreement signed on behalf of all Parties and approved by the Court.

14.4 *Waiver*.  The provisions of this Agreement may be waived only by an instrument in writing executed by the waiving party.  The waiver by any party of any breach of this Agreement shall not be deemed to be or construed as a waiver of any other breach (whether prior, subsequent, or contemporaneous) of this Agreement.

14.5 *Construction*.  None of the Parties hereto shall be considered to be the drafter of this Agreement or any provision thereof for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause the provision to be construed against the drafter thereof.

14.6 *Principles of Interpretation*.  The following principles of interpretation apply to this Agreement:

14.6.1 *Headings*.  The headings in this Agreement are for reference purposes only and do not affect in any way the meaning or interpretation of this Agreement.

14.6.2 *Singular and Plural*.  Definitions apply to the singular and plural forms of each term defined.

14.6.3 *References to a Person*.  References to a person include references to an entity, and include successors and assigns.

14.6.4 *Sections.* A reference to a section in this Agreement also refers to any subsections within that section.

14.7 *Survival*. All representations, warranties, and covenants set forth in this Agreement shall be deemed continuing and shall survive the Effective Date of Settlement.

14.8 *Entire Agreement*. This Agreement contains the entire agreement among the Parties relating to this Settlement and supersedes any and all prior verbal and written communications regarding the Settlement.

14.9 *Counterparts*. This Agreement may be executed by exchange of executed faxed or PDF signature pages, and any signature transmitted in such a manner shall be deemed an original signature. This Agreement may be executed in two or more counterparts, each of which shall be deemed to be an original, but all of which, when taken together, shall constitute one and the same instrument.

14.10 *Binding Effect*. This Agreement binds and inures to the benefit of the Parties, their assigns, heirs, administrators, executors, and successors-in-interest, affiliates, benefit plans, predecessors, and transferees, and their past and present shareholders, officers, directors, agents, and employees.

14.11 *Further Assurances.* Each Party agrees, without further consideration, and as part of finalizing the Settlement hereunder, that they will in good faith promptly execute and deliver such other documents and take such other actions as may be necessary to consummate the subject matter and purpose of this Agreement.

14.12 *Tax Advice Not Provided*. No opinion or advice concerning the Tax consequences of the Settlement Agreement has been given or will be given by counsel involved in the Action to the Settlement Class, nor is any representation or warranty in this regard made by virtue of this Agreement. The Tax obligations of the Settlement Class and the determination thereof are the sole responsibility of each Settlement Class Member, and it is understood that the Tax consequences may vary depending on the particular circumstances of each Settlement Class Member.

14.13 *Authority.* The Parties (RTX and Named Plaintiffs) have executed this Agreement on the dates acknowledged below, and each signatory hereby certifies that they are authorized to sign this Agreement on behalf of their respective parties; specifically, the representative of RTX certifies that they are authorized to sign this Agreement on behalf of Defendants Raytheon Company, Raytheon Health Benefits Plan, and William M. Bull (former plan administrator of the Plan).

**SIGNATURES:**

Raytheon Technologies Corporation on
behalf of Raytheon Company, Raytheon
Health Benefits Plan, and William M. Bull

By: _____

Its: ___Corporate Vice President, Total Rewards - Jeff Kridler___

Dated: ___August 12, 2022___

S█ R█████
Individually and on behalf of N███
R██████, and on behalf of the proposed
Settlement Class

Dated: __8/12/2022__

T█ R█
Individually and on behalf of N███
R██████, and on behalf of the proposed
Settlement Class

Dated: __Aug 12 2022__

23

## APPENDIX A TO SETTLEMENT AGREEMENT

### List of "Qualified Mental Health Conditions"

| ICD-10 Code | ICD-9 Equivalent | Description |
|---|---|---|
| F70 | | Mild intellectual disabilities |
| F71 | | Moderate intellectual disabilities |
| F72 | | Severe Intellectual Disabilities |
| F73 | | Profound Intellectual Disabilities |
| F78 | | Other Intellectual Disabilities |
| F79 | | Unspecified Intellectual Disabilities |
| F800 | 315.39 | Phonological Disorder |
| F801 | 315.31 | Expressive Language Disorder |
| F802 | 315.32 | Mixed Receptive-Expressive Language Disorder |
| F804 | | Speech and Language Developmental Delay |
| F8089 | | Other Developmental Disorders of Speech and Language |
| F809 | | Developmental Disorder of Speech and Language Unspecified |
| F810 | | Specific reading disorder |
| F812 | | Mathematics Disorder |
| F8181 | | Disorder of written expression |
| F8189 | | Other Developmental Disorders of Scholastic Skills |
| F819 | 315.9 | Developmental Disorder of scholastic skills unspecified |
| F82 | 315.4 | Specific Developmental Disorder of Motor Function |
| F840 | 299.0 | Autistic Disorder |
| F843 | | Other childhood disintegrative disorder |
| F845 | | Asperger syndrome |
| F848 | | Other Pervasive Developmental Disorders |
| F849 | | Pervasive Developmental Disorder, unspecified |
| F88 | 315.8 | Other Disorder of Psychological Development |
| F89 | | Unspecified Disorder of Psychological Development |
| F938 | | Other Childhood Emotional Disorders |
| F941 | | Reactive Attachment Disorder of Childhood |
| F942 | | Disinhibited Attachment Disorder of Childhood |
| F948 | | Other Childhood Disorders of Social Functioning |
| F949 | | Childhood Disorder of Social Functioning Unspecified |